## BRAGG *v.* FITCH.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CONNECTICUT.

Argued January 11, 12, 1887. — Decided May 2, 1887.

In view of the previous state of the art, the claims in the patent granted to Charles B. Bristol, May 16, 1865, for an improvement in harness hooks or snaps must be restricted to the precise form and arrangement of parts described in the specification and to the purpose therein indicated.

BILL in equity to restrain alleged infringements of letters-patent. Decree for complainants. Respondents appealed. The case is stated in the opinion of the court. The following are the figures referred to in the opinion.

*Fig, 1.*

*Fig. 2.*

*Fig. 3.*

*Fig. 4.*

*Mr. William Edgar Simonds* for appellants.

*Mr. John K. Beach* (*Mr. John S. Beach* was with him on the brief) for appellees.

Mr. Justice Bradley delivered the opinion of the court.

This is a suit on a patent granted to Charles B. Bristol, May 16, 1865, for an improvement in harness hooks or snaps; the complainants being assignees of the patent. These hooks are usually attached to the end of a strap or chain for the purpose of fastening it to a ring or staple, as in the case of a tie-strap for fastening a horse to a post. The small hook by which a watch chain is fastened to the ring or stem of the watch is an example. It has a movable part called the tongue, which is connected to the shank of the hook by a pivot, and is kept in place against the end of the hook by the pressure of a spring acting between the shank and the tongue. The tongue may be pressed inward, so as to admit the ring or staple, and is thrust back to its place by the action of the spring. In some form or other, the implement has long been in use. The patent in question relates to the mode of arranging the spring in the tongue, and of attaching both to the shank of the hook. The complainants' expert says: "The invention shown and described in the patent of Bristol is an improvement in that class of snap-hooks in which the tongue is pivoted in a recess between two cheeks in the shank. In this recess a coil spring is arranged around the pivot so that the two ends of the spring bear, one upon the tongue and the other upon the body of the hook, tending to press the tongue up against the end of the hook, but yet permit the tongue to be depressed to open the

hook. In this class of hooks prior to Bristol the tongue was cast with a recess upon its under side to form two cheeks corresponding to the cheeks in the shank of the hook. The cheeks on the tongue were drilled corresponding to the hole through the cheeks in the shank, so that a rivet could be inserted through the sides of the shank and both sides of the tongue to form the pivot on which the tongue would turn. The coil of the spring was arranged around the pivot, the two ends bearing, one upon the shank and one upon the hook, as before described."

The principle of this arrangement was exhibited in many different forms. Sometimes the spring merely passed around the pivot without any coil; sometimes a straight spring was so secured to the one part and made to press against the other, as to effect the same object. One would hardly suppose that a patentable invention could have been made in relation to this little device. But many patents have been, and probably more will be, granted. The Bristol patent, now sued on, is one of the latest in the series which has been brought to our attention.

The particular contrivance which is claimed as an invention in this patent may be described as follows. Instead of having a separate pivot, or pin, to pass through the cheeks or ears of the hook and tongue for the purpose of connecting them together and holding the coil of the spring, a small projection or fulcrum, to answer the purpose of a pivot, is cast as a part of one of the cheeks of the hook, on its inner side, and the cheeks (being made of malleable cast iron) are spread further apart, and the recess between them is thus wider than they are intended to be when the article is finished. The coil of the spring is placed on the projecting fulcrum. The tongue is made with a recess as usual, but one side of this recess is left open, the other side having the ordinary cheek perforated with a hole to admit the fulcrum-pivot. The tongue, thus constructed, is placed in the recess of the hook and slipped over the spring and pivot; and then, by means of a vice or press, the outside cheeks of the hook are squeezed together until the fulcrum-pivot passes through the hole in the cheek of the

tongue, and comes in contact with the opposite cheek of the hook. The patentee, after having described the construction of the several parts, explains the mode of putting them together as follows:

"Having made the parts as before described, I place the spiral spring, Fig. 4, on the projection or pin *n*, Fig. 2, and slip the tongue, Fig. 3, on to the projection or fulcrum-pin *n*, so that the spring, Fig. 4, will rest in and be inclosed by the recess *r*, with the two tangential parts *h* and *i* pointing toward the hook *a*. I then place the article in a proper vice or press and close up the cavity between *c* and *d* until the pin *n* comes in contact with the side or ear *c*, Fig. 2, when the whole will appear as represented in Fig. 1, (except the strap A,) and will be ready for use or sale."

The claim of the patent is as follows, namely:

"What I claim as my invention, and desire to secure by letters-patent, is —

"1. The combination of the tongue *g* with the spiral spring, Fig. 4, when the spring works on the torsion principle and rests in a recess (as *r*), in the rear end of the tongue, substantially as herein described.

"2. The combination of the fulcrum-pin *n* with the tongue *g*, when the pin *n* is cast in one of the ears, and the recess or cavity is fitted to be closed, substantially as herein described."

Only the first claim is relied on in the present suit, as the defendants do not use the fulcrum-pivot, cast with the cheek of the hook, but the ordinary pivot inserted in holes in both cheeks.

The defence is threefold, namely: 1st. That the supposed invention was described in previous patents; 2d. That, in view of the state of the art, the device claimed as new was not a patentable invention; 3d. That, upon a proper construction of the patent, the defendants do not infringe it.

Several prior patents were given in evidence which show, if not an entire anticipation of, at least a very near approach to, the invention claimed.

In 1852, a patent was issued to Palmer & Simmons for an improved hook for whiffletrees, embodying the same prin-

ciple as the snap-hook, in which the recess of the tongue, inclosing the spiral spring, having precisely the same object as the recess of the tongue and spring in Bristol's and other snap-hooks, had but one cheek, the other side of the recess being open until it was applied to the end of the whiffletree supporting the hook, by which it was closed up when the parts were brought together. The connection of the two was made by a pivot passing entirely through the cheek of the tongue and the coil-spring inclosed therein, and into the end of the whiffletree. This pivot had a broad head, which compressed the tongue and kept it in place, in the same manner as is done by the cheek of the hook in Bristol's snap-hook.

In 1859, one Daniel H. Hull patented a trace-fastener, which contained a similar device, so far as the arrangement of the tongue and spring are concerned. The tongue, called in the patent the latch, had a recess containing the spring, which was open on the inside, opposite to a slight recess in the slotted fastener, which corresponded to the hook in the snap-hook. The pivot on which the tongue moved, and which passed through the spiral spring, was of the usual kind, and not cast as part of the fastener or of the latch.

In January, 1864, a patent was granted to one C. S. Abeel for an improvement in safety hooks, in which he dispensed with both the ears of the tongue by the use of one or two straight springs, one end of which was inserted in a slight groove in the recess cr chamber of the hook, and the other resting against the tongue either in a groove or against a projection or shoulder.

In December of the same year, a patent was granted to Oliver S. Judd for an improvement in snap-hooks, in which the spring was arranged in the recess of the tongue and operated exactly like the spring in Bristol's hook; the only difference between the two being, that in Judd's hook the pivot passed through both the hook and the tongue, and the latter had two cheeks, one on each side of its recess. The arrangement of the spiral spring, with both tangential ends projecting forward towards the hook, was precisely like Bristol's.

These prior patents exhibit every feature of the Bristol snap-hook, described in the patent sued on, except the single one of the fulcrum-pivot cast as part of the cheek of the hook, and not passing through holes in both ears. This fulcrum is the only novelty shown in the patent; and this is not used by the defendants. The snap-hook made by them has the same pivot which is used in Judd's hook, inserted in the same way, and passing through both cheeks of the hook. The only particular in which it differs from Judd's is, that the tongue has but one cheek, and only one end of the coiled spring projects forward, towards the hook, resting against the tongue; whilst the other end projects backward, and presses against the side of the recess in the tongue, which is curved around and prolonged sufficiently for this purpose. It differs in two respects from the Bristol snap-hook, to wit, in not using the fixed fulcrum cast as part of the cheek, and in not having both tangential ends of the spring projecting forward towards the hook, but having one of the ends projecting backwards and pressing, not against the tongue itself, but against the opposite side of its recess, prolonged sufficently for the purpose.

It is obvious from the foregoing review of prior patents, that the invention of Bristol, if his snap-hook contains a patentable invention, is but one in a series of improvements all having the same general object and purpose; and that in construing the claims of his patent they must be restricted to the precise form and arrangement of parts described in his specification, and to the purpose indicated therein. As we have seen, with one exception, (the solid pivot,) all the parts are old, and have been used in combination in other things of the same general character. The use of a recess in the tongue with one of its ears or cheeks removed was to adapt it to the new element referred to, namely, the solid pivot; and although the first claim of the patent is for the tongue thus constructed, in combination with the spiral spring, as arranged in connection with it, yet this claim must be construed in reference to the purpose for which the tongue and spring, thus arranged, were intended, namely, for adjustment upon the solid pivot. Without this relative purpose, the combination

of the tongue and spring, by itself, would be anticipated by the patent of Palmer and Simmons, and that of Hull. If it has any novelty, it consists in its new application to the snap-hook as devised by Bristol; and this was a snap-hook provided with the peculiar solid pivot, or fulcrum-pin, which is the subject of his second claim, and to which, as we have seen, the form and arrangement of the tongue and spring were specially adapted, and requisite to its beneficial use. This necessary restriction of the first claim renders it clear that it is not infringed by the defendants; for, as before stated, they do not use the solid pivot, but the old and long-used pin, passing through both ears or cheeks of the tongue and the hook.

The defendants also use a different device from that described by Bristol, in the arrangement of the spiral spring, the two ends of which, instead of pointing towards the hook, point in different directions, one towards the hook and pressing against the body of it, and the other in the opposite direction, and pressing against the side of the recess in the tongue, which is prolonged and curved around for that purpose.

On the whole view of the case, we are satisfied that the defendants do not infringe the patent sued on when construed as it must be to give it any validity.

*The decision of the Circuit Court must, therefore, be reversed, and the case remanded, with instructions to dismiss the bill.*