## J. L. MOTT IRON WORKS *v.* STANDARD MANUF'G CO.

*(Circuit Court, W. D. Pennsylvania.* May 28, 1892.)

1. PATENTS FOR INVENTIONS—LIMITATION OF CLAIMS—PRIOR ART—BATH OVERFLOWS.
   Letters patent No. 170,709, issued December 7, 1875, to William S. Carr, for an improvement in waste valves and overflows for baths and basins, claim: "The tube, *a*, provided with the collar, *i*, and lock nut, *l*, for clamping the slab, *m*, in combination with the tubular stem, *f*, of the valve, *e*, passing through the lock nut, *l*, and means for sustaining the tube, *f*, when elevated, substantially as set forth." *Held* that, in view of the prior state of the art, as shown specially by the patent of July 21, 1874, to J. T. Foley, the patent must be limited to the specific mechanism described.

2. SAME—COMBINATION—UNPATENTABLE AGGREGATION.
   Claim 2 of letters patent No. 358,147, issued February 22, 1887, to John Demarest for a kindred improvement, is for a mere aggregation of parts without co-operating action, and not for a patentable combination.

3. SAME—LIMITATION OF CLAIM—DISCLAIMER.
   Where an applicant acquiesces in the rejection of his original claims by filing a disclaimer, submitting modified claims, and accepting a patent therefor, such claims must be strictly construed.

In Equity. Suit by the J. L. Mott Iron Works against the Standard Manufacturing Company for infringement of patents. Bill dismissed. For prior report, see 48 Fed. Rep. 345.

*Francis Forbes* and *W. Bakewell & Sons,* for complainant.

*Connolly Bros.,* for defendant.

Before ACHESON, Circuit Judge, and BUFFINGTON, District Judge.

ACHESON, Circuit Judge. The defendant is charged with the infringement of letters patent No. 170,709, for an improvement in waste valves and overflows for baths and basins, granted to William S. Carr, December 7, 1875, and No. 358,147, for a kindred improvement, granted to John Demarest, February 22, 1887. The specification of the Carr patent states that overflows for baths and basins have been made of a vertical pipe, passing through the woodwork or slab, and connected at its bottom end with the sewer pipe, and with a branch to the bath or basin, and at the intersection is a seat for a valve on the lower end of an overflow pipe within the vertical pipe. Then follow in succession these two clauses:

"In this character of overflow, the cap for the vertical pipe has been connected to the slab by bolts, and the rod that is used to lift the overflow pipe and valve has passed through this cap."

"My invention is made for dispensing entirely with the cap, and allowing the upper end of the vertical tube to be filled by a tube that is lifted with the overflow pipe, and which is capable of being withdrawn whenever it is necessary to take out the valve for cleaning."

Here succeeds a reference to the accompanying drawings, and then come some explanations of parts theretofore in use, namely, the exterior vertical pipe, and its connections at the lower end, and the valve and valve seat and valve stem; and it is explained that when the valve is upon its seat, water accumulates in the bath or basin until it flows over the upper edge of, or through apertures in, the hollow valve

stem, (the overflow pipe;) but, when the valve is raised from its seat, the contents of the bath or basin flow off by the escape pipe. Then follows this clause:

"My improvement relates to a flange, i, applied around the upper end of the cylinder, a, and a lock nut, l, at the upper end thereof, whereby the table or slab, m, is clamped between such lock nut and the flange, i."

The "cylinder, a," is the "vertical pipe" already mentioned,—the stand pipe which incloses the overflow pipe. In the patent drawing the lock nut, l, is shown to be a flanged thimble, with a top opening screwed upon the outside of the upper end of the cylinder, a, and resting upon the upper side of the slab, m; and the "flange, i," is shown as seated against the under side of the slab, m. The experts on both sides state that the drawing represents the flange, i, to be integral with the cylinder, a. Manifestly upon the face of the drawing this is so, and nothing in the specification suggests any different construction of those parts. The specification states:

"The tubular stem, f, of the valve, e, is continued through the lock nut, and of a size to fit the interior thereof loosely; and in this enlarged portion, n, of such stem there is an L-shaped slot, as seen in Fig. 2, so that a screw or pin, o, passing through the lock nut, may enter this slot, in order that the valve may be held up, after it has been raised, by partially turning the tubular stem for the pin to enter the horizontal portion of that slot. I re-mark, however, that a spring catch in the tube, n, might be employed to hold the valve up, the end of said spring catch resting upon the upper end of the lock nut. * * * If desired, an oval stem, with a neck therein, might be employed if a movable cover is placed inside the lock nut, through which this stem passes."

In Carr's original application the first two claims read thus:

"(1) The lock nut, l, and collar, i, in combination with the tube, a, pipes, b and c, removable tubular stem, f, and valve, e, substantially as set forth.

"(2) The tubular stem, n, passing through the lock nut, l, and provided with means for sustaining said stem when elevated, in combination with the valve, e, stem, f, and tube, a, substantially as set forth."

The patent office rejected those claims on a reference to the patent of Foley, and Carr then amended his application by striking out said two claims, and substituting the following disclaimer and claim:

"I do not claim an overflow tube, valve, and tubular stem, nor the device shown in the patent of J. T. Foley, July 21, 1874. I claim as my invention (1) the tube, a, provided with the collar, i, and lock nut, l, for clamping the slab, m, in combination with the tubular stem, f, of the valve, e, passing through the lock nut, l, and means for sustaining the tube, f, when elevated, substantially as set forth."

This claim was allowed and the patent issued.

The Foley patent, which was for an improvement in this class of waste valves and overflows, was granted originally July 21, 1874, and was reissued November 16, 1875. In his specification, after mention-ing an objection arising from the difficulty in removing the tube and valve for cleansing, Foley says:

"My invention relates to an improvement that is made for allowing the valve and overflow to be easily removed. For this purpose the valve and its

tubular stem is continued up through the marble or wooden slab or table contiguous to the basin or bath, and provided with a removable cap, through which the stem to the handle passes."

The special features of Foley's improvement are thus explained in his specification: "The stand pipe, *j*," of the bath or basin overflow passes up through the slab, and is provided with a removable cap, "preferably screwed upon the tube, *f*," and through this cap is a rod, *m*, with a "handle, *n*," at the upper end, and the lower end of the rod is connected by a bridge or bail with the "tubular stem, *o*," which is within the tube, *f*, or stand pipe, and forms the overflow pipe. The rod, *m*, is so made that when it is raised and partially revolved it will suspend the tubular stem and valve. For this purpose the rod, *m*, is made "oval sectionally, with a circular neck at the proper place," to allow a turning motion when the valve has been lifted the proper distance. If necessary to remove an obstruction, or for cleansing purposes, the stem and valve may be drawn out by removing the cap. The drawing shows a screw connection between the removable cap and the tube or stand pipe, *j*.

The defendant's stand pipe is not provided with the flange or collar, *i*, of the Carr patent, or with any equivalent thereof, but is the same as the Foley stand pipe. There is in the defendant's structure a tubular flanged sleeve, which screws upon the upper threaded end of the stand pipe, and this screw connection is substantially identical with the connection between the corresponding parts shown in the Foley patent. This tubular flanged sleeve is exteriorily screw threaded, to receive a nut to clamp the sleeve to the table or slab, and this attachment of the sleeve to the table or slab is secured irrespective of whether the sleeve is attached to the stand pipe or not. The upper portion of the defendant's overflow tube is screw threaded, and to it is screwed a handle cylinder, having thereon two diametrically opposite projecting vertical lugs at different heights, and this handle cylinder extends up through the tubular flanged sleeve. This sleeve has an inwardly projecting annular flange, which acts as a cap or cover for the annular space between the stand pipe and the overflow tube within it. The inwardly projecting flange has extending through it a vertical groove, which co-operates with the projecting lugs on the handle cylinder, thus: When the overflow tube is lifted, the upper lug passes through the vertical groove, and if the handle cylinder is then turned the upper lug will rest upon the upper surface of the tubular sleeve, and support the overflow tube and valve in a raised position; but if it is desired to withdraw the overflow tube and valve altogether, this can be done by turning the handle cylinder until the lower lug registers with the vertical groove. These devices for manipulating and sustaining the overflow tube when elevated, we think, are substantially different from the means shown or suggested in the Carr patent.

We now turn to a consideration of the construction to be given to the Carr patent. A careful study of the proofs has convinced us that Carr's invention was by no means one of any primary character. He

was an improver simply, and if his improvement called into exercise inventive genius at all the advance made was not great. Undoubtedly, Foley had previously conceived the idea of making the valve and its tubular stem easily removable from the stand pipe, and had devised means to accomplish that result. Hence, when Carr's original claims were rejected on the Foley patent, he struck out the word "removable" as applied to his "tubular stem, $f$," and also discarded the "tubular stem, $n$," as a distinct element of his combination. Again it is worthy of notice that in his second original claim the flange or collar, $i$, was not mentioned; but in his claim as finally formulated he inserted the words, "the tube, $a$, provided with the collar, $i$." Clearly, this became an essential part of the combination. Indeed, it seems to us that the specific devices disclosed for connecting the slab and stand pipe constitute the especial feature of the invention as finally claimed. This view is greatly strengthened when we read, in connection with Carr's disclaimer and amended claim, the declaration contained in his specification:

"My improvement relates to a flange, $i$, applied around the upper end of the cylinder, $a$, and a lock nut, $l$, at the upper end thereof, whereby the table or slab, $m$, is clamped between such lock nut and the flange, $i$."

We have already adverted to the fact that the patent drawing plainly shows that the flange or collar, $i$, on the stand pipe is rigid, and no hint to the contrary is discoverable in the specification. Nor is any alternative device for securing the stand pipe to the slab, $m$, suggested, although we do find several different suggestions as to means for sustaining the overflow tube when elevated. It is therefore quite inadmissible to adopt the theory of the plaintiff's expert that the described means for clamping the slabs were merely illustrative of any suitable means. *Snow* v. *Railway Co.*, 39 O. G. 1081, 121 U. S. 617, 630, 7 Sup. Ct. Rep. 1343. Again, the action of the patentee upon the rejection of his original claims requires that his claim as allowed shall be construed strictly against him, and in favor of the public. *Sargent* v. *Lock Co.*, 31 O. G. 661, 114 U. S. 63, 5 Sup. Ct. Rep. 1021; *Roemer* v. *Peddie*, 49 O. G. 2151, 132 U. S. 313, 10 Sup. Ct. Rep. 98. Finally, in view of the previous state of the art, especially as found in the Foley patent, we are of the opinion that the plaintiff must be restricted to the specific forms of mechanism shown in Carr's patent, (*Railway Co.* v. *Sayles*, 15 O. G. 243, 97 U. S. 554; *Bragg* v. *Fitch*, 39 O. G. 829, 121 U. S. 478, 7 Sup. Ct. Rep. 978;) but, as we have seen, the defendant's structure does not contain the flange or collar, $i$, or any equivalent therefor, and in other respects his devices are not colorably but materially different from those of the Carr patent.

The claim of the Demarest patent which it is alleged the defendant infringes is as follows:

"(2) The combination with the horizontal waste pipe, C, and vertical stand pipe, E, of the socket, G, screwed upon the exterior of the stand pipe, E, and having a flange resting upon the slab, and an inwardly projecting pin, 17, the overflow pipe and valve within the stand pipe, the tubular cap, P,

screwed upon the exterior of the overflow pipe, and slotted for the reception of the pin, 17, and the lock nut, 16, at the lower end of the tubular cap, P, substantially as and for the purposes set forth."

In our apprehension, we have here several groups of devices, performing distinct functions without co-operative action. The particular means for attaching together the socket, G, and the stand pipe, E, are quite independent in operation and function of the devices for sustaining the overflow pipe when raised, namely, the pin, 17, and the communicating slots in the cap, P. So, too, the means by which the screw attachment of the cap, P, to the overflow pipe is effected and kept secured by the lock nut, 16, are distinct from and independent of either of the other two groups of devices. Guided by the rulings in *Pickering* v. *McCullough*, 21 O. G. 73, 104 U. S. 310; *Hendy* v. *Iron Works*, 43 O. G. 1117, 127 U. S. 370, 8 Sup. Ct. Rep. 1275; *Royer* v. *Roth*, 49 O. G. 1987, 132 U. S. 201, 10 Sup. Ct. Rep. 58; *Setter Co.* v. *Keith*, 55 O. G. 285, 139 U. S. 530, 11 Sup. Ct. Rep. 621, and other cases,—we reach the conclusion that this claim is for a mere aggregation of parts, and not a patentable combination; but, if a different view of this claim were allowable, and patentable novelty were conceded, still no infringement of the combination is shown, for the defendant does not employ the inwardly projecting pin, 17, and the slots in the tubular cap, P, but means substantially different. It may be added that if Carr's invention was not a primary one, much less was Demarest's, and therefore the principle of the cases of *Railway Co.* v. *Sayles, supra,* and *Bragg* v. *Fitch, supra,* has here full application.

We are of the opinion that the plaintiff's case fails as to both the patents sued on. Let a decree be drawn dismissing the bill of complaint, with costs.

BUFFINGTON, District Judge, concurs.