S. A. COOK & CO. et al. v. HEYWOOD BROS. & WAKEFIELD CO. et al.

(Circuit Court, E. D. Pennsylvania. August 1, 1904.)

No. 43.

1. PATENTS—INVENTIONS IN SAME ART.

A patent for an improvement in chairs having an adjustable back, and one for a similar device as an improvement in articles of furniture having a swinging member, are in the same art; only mechanical skill being required to adapt the device to the different articles.

2. SAME—INFRINGEMENT—IMPROVEMENT PATENTS.

Where an invention is for an improvement on a known machine by a mere change of form or combination of parts, the patentee cannot treat another as an infringer who has improved the original machine by the use of a different form or combination performing the same function.

3. SAME—IMPROVEMENT IN FURNITURE.

The Bowen patents, No. 667,162, for an improvement in chairs, and No. 678,219, for an improvement in furniture, both relating to a ratchet device for use on articles of furniture having a swinging member, are not infringed by the device of the Luppino reissued patent, No. 11,919.

In Equity.    On final hearing.

J. S. Barker and H. H. Bliss, for complainants.
Southgate & Southgate, for respondents.

HOLLAND, District Judge.    The complainants allege and set forth in their bill for a preliminary injunction that the defendants have infringed claims 1 and 4 of letters patent granted to G. A. Bowen, No. 667,162, January 29, 1901, for improvements in chairs, and claims 5 and 6 of letters patent granted to said Bowen, No. 678,219, July 9, 1901, for improvements in furniture, which patents are assigned to and owned by them.    Defendants claim they are using a device shown in patent to Joseph Luppino, No. 11,919, reissued July 2, 1901.    The defense set up and relied upon by the defendants is (1) that the claims in suit are invalid and void by reason of anticipation by the prior art; and (2) that defendants' patented device does not infringe any claims of the patents in suit.    The bill of complaint alleges that the improvements in question are of great utility, and that complainants have manufactured and supplied to the trade articles of furniture, and particularly chairs, made according to the aforesaid letters patent, and have uniformly securely affixed to such articles of furniture plates bearing the word "Patented," together with the dates of issue of such patents, respectively.    The answer denies the utility of the said improvements, and any manufacture thereof for the trade by the complainants.    Mr. Melville E. Dayton, the only witness called by the complainants as a mechanical expert, himself an inventor of an adjustable chair, who is acquainted with the sale and kind of chairs in the market for the last five years, failed to find any Morris chairs employing the back-adjusting device of the Bowen patents in suit prior to his connection with this case, so that as the complainants, in their case thus presented, are

¶ 2. See Patents, vol. 38, Cent. Dig. § 38.

standing on their naked rights, there simply is involved the construction of the patents in suit.

In the first patent, claims 1 and 4, alleged to be infringed, are as follows:

"(1) The combination with the seat-frame and the hinged back, of a pivoted pawl carried by one of said parts, a catch or ratchet plate carried by the other, and provided with two tracks separated by a dividing rib or projection, which is provided with projections to be engaged by the pawl upon one side, the two tracks being connected, whereby the pawl may pass from one to the other, substantially as set forth."

"(4) The combination with a seat-frame and swinging back, of a pawl, D, having a pin, d, projecting therefrom at its free end, a ratchet-plate carried by the seat-frame in rear of the hinge connection of the swinging back, the said ratchet-plate being provided with a circumferential flange and a separating-strip or central rib, 4, which is provided with projections or ratchet-teeth upon its upper and rearmost face, the said circumferential flange and central rib being constructed substantially as shown, whereby there are formed two curved ways, 5 and 6, connected at their ends, in which the pin, d, of the pawl travels as the back is swung from one position to another."

In order that the device defined in these claims may be understood, it is only necessary to quote from the description, where the device, its manner of construction, and mode of application are fully explained:

"My invention relates to chairs of the type having swinging and adjustable backs, and has for its object to improve the means whereby the back is held in a more or less inclined position. In drawings, A represents the seat-frame of the chair; B represents the swinging back, hinged at its lower edge to the seat-frame, the back being supported between the rear portions of the arms. Each side bar, C, of the back is provided with a swinging pawl, D, which is provided with a projection or pin, d, adapted to engage with a catch-plate or retaining device carried by the frame of the chair on either side of the said frame. The plate is surrounded by a circumferential flange, 3, within which flange and projecting from the plate is a stationary rib or parting-strip, 4, in figure 5, substantially parallel with the opposite sides of the flange, 3, so that there are formed two tracks or ways, 5 and 6, between the circumferential flange and the central rib, one way on either side of the latter. The circumferential flange and central parting rib or piece, 4, are so shaped that the ways, 5 and 6, are curved, the concave or inner sides of the curves being toward the base or hinged end of the back. The lower or rear side of the rib, 4, is plain and concentric with the portion of the flange, 3, which is opposite thereto, while the opposite outer or upper edge of the rib is serrated or provided with a series of projections, 7, with which the pin or projection, d, may engage. The pawl, D, is pivoted to the side bar of the swinging back at such a point that this pivot is always above the projection or pin, d, when the device is in operation; and the construction of the catch or ratchet device is such that when the back is swung forward and into an upright position, carrying the pin, d, to the upper forward end of the ratchet device, the hinge of the pawl is forward of the pin or projection, d, and, when the back is swung to the other extreme of its movement, then the hinge connection of the pawls, D, is in rear of the pins, d, as they lie at the lower rearward end of the catch or ratchet-plate. The reason for this construction and arrangement is to cause the pawls to readily swing by gravity at the end of each movement of the back, so as to freely clear the central ribs or projections, 4. To secure the action of the pawl just described, it is necessary that the arc through which the pivoted end of the pawl moves as the back is being swung from one extreme of position to the other should be different from that through which the free ratchet-plate-engaging end moves, and this is secured by constructing the ratchet-plate so that the part which unites the two ways at one end (the lower end in the form of invention shown) is nearer to the hinge or fulcrum of the swinging back than are the opposite connected ends of the ways. It will be seen by referring to Fig. 3 that when the chair-back is swung forward into a sub-

stantial upright position the pins, d, are drawn forward and out of engagement with the ratcheted sides of the ribs, 4, and then fall therefrom into the upper forward ends of the ways, 5. As the chair-back is moved rearward the pins on the pawls travel without obstruction down and backward along the ways, 5, until they pass the lower ends of the ribs, 4, at which time the hinge-line of the pawls, D, will be rearward of the projections or pins, d, so that as soon as the pins or projections on the pawls escape the lower ends of the ribs the pawls will swing rearward by gravity, and opposite the lower ends of the ways, 6. If now the chair-back be lifted, the pins, d, will be carried upward into the ways, 6, and, by the time the first projections or ratchet-teeth upon the upper faces of the ribs are reached, the hinge-line of the pawls will have passed forward of the pins, so that the latter will freely engage with the said projections, and, as the chair-back is moved further forward and upward, the pawls will engage with the ratchet-teeth one after another, holding the chair-back in the angular position to which it may be adjusted."

The claims of the second Bowen patent alleged to be infringed are 5 and 6, as follows:

"(5) The combination with the frame of an article of furniture, a swinging member thereof, and hinging parts uniting them, of a ratchet and pawl engaging with the said relatively movable parts for holding the swinging member in different positions, the said ratchet comprising an attaching plate, a rack with which the pawl engages, and a circumferential flange surrounding the rack, and spaced therefrom, whereby a way is formed entirely around the rack, in which way the pawl is arranged to move, the said flange being slotted at one point to permit the separation of the pawl, substantially as set forth.

"(6) The combination with the frame of an article of furniture, a swinging member thereof, and hinging parts uniting them, of a swinging pawl having a laterally projecting pin, and a ratchet with which the pin engages, these parts being arranged to hold the swinging member in different positions, and the ratchet being inclined downward, and comprising an attaching-plate, a rack with which the pin of the pawl engages, and a circumferential flange surrounding the rack, and spaced therefrom, and arranged to inclose a way in which the pin of the pawl moves, the flange being slotted on its upper side at 12 to permit the passage of the pin of the pawl into the way of the ratchet, substantially as set forth."

This patent relates to the same device described in connection with the first patent to Bowen, with the addition of a slot in the upper flange of the two-track ratchet-plate, for the purpose of separating the pawl pin from the ratchet-plate, thereby enabling the parts of the article of furniture to which it may be adjusted to be separated for transportation or packing, and for the purpose of easy and ready adjustment when the article of furniture is to be put together for use.

In order that it may be fully understood just what Bowen has patented, and whether the defendants have infringed, it was be necessary to take a review of the prior state of the art at the time the two patents were issued to Bowen, and the Luppino patent under which the device of the defendants is made; and, before doing so, we might observe that while the complainants' first patent is for an improvement in chairs, and the second patent is an improvement in furniture, as set forth in the respective descriptions, yet, in the construction of these patents, we shall hold that they are a patent for chairs or furniture, and can be used for either one or the other, because it is a patent for use on a general class of articles of merchandise, and, of course, only requiring mere mechanical skill to adjust it for use upon the different articles of furniture of a similar kind.

In the case of Antisdel v. Bent (C. C.) 122 Fed. 811, it was urged

by complainant that the patent was applied only to the construction of chairs, and not to the construction of beds, the specifications, however, claiming, that it was applicable to other articles of like character; and it was held that folding beds were of like character to folding chairs. We think the converse of this proposition is true, and is important in considering the defendants' device; and we have no doubt a device applicable to folding beds, couches, barber chairs, dental chairs, car seats, foot rests, surgeons' chairs, are all of a similar kind, and, in an invention for the raising or lowering a swinging member of one, would require only mechanical skill for the purpose of adapting the device to the use of the others.

In the description of these inventions, it is stated that the invention of the first patent is applied to chairs, "but it will be apparent that it is equally applicable to certain other pieces of furniture having parts, one of which is to be swung and maintained in an inclined position relative to the other—as, for instance, to a couch having a head portion which is adapted to be swung and inclined." And as to the second patent, the description sets forth that "my invention relates to the furniture of the kind in which one part, such as a back, is hinged to another portion, and swings relatively thereto, and is adjustable from one position to the other. I have illustrated my invention as applied to a chair, though I do not intend thereby to be understood as limiting my invention in its useful application to that particular article of furniture."

In the examination of the prior art, it will be found that some of the inventions were applied to beds, others to couches, chairs, and articles of furniture having parts, one of which is to be swung and maintained in an inclined position relative to the other. The ratchet-plate in both the complainants' and defendants' patents are double track, around which the pin of the pawl travels, whereas, in the prior art, beginning with the most crude construction of this sort of a device, there was but a single track; and the first device of this kind was applied to a Morris chair with a single-track catch or ratchet-plate arranged under the arm of the chair forward of the swinging member, so that the supporting rod or pivoted pawl could ratchet from one notch up to the other, whereby the hinged back could be brought from its lowest position, step by step, up to its highest position. The Goss patent, No. 137,069, granted March 25, 1873, illustrates this construction. In his description he states, "in raising the back, no pressure on the rods is required; the weight of the rods causing their pins to drop into the successive notches in the racks." In the Allen patent, No. 514,403, a single-track ratchet-plate was used, carried by the seat-frame in the rear of the hinged connection of the swinging back. The notches of the ratchet in this patent are on the bottom or lower part of the ratchet-plate, and so arranged that, as the swinging back is raised from its lowest to its highest position, the point of the pawl drops by gravity into the notches. In these old devices, the swinging member of the article of furniture to which they were applied could be pulled from its lowest position by steps to its highest position, and no manipulation of the catch device was necessary, except the power to pull the swinging member. But when it was necessary to lower the

swinging member, the pawls had to be raised with the hand and lifted back over the ratchet-teeth, and the double-track device was introduced for the purpose of avoiding that annoyance, so that the swinging member, when raised from the lowest point, step by step, as the pin of the pawl would ratchet from one notch to the other, and the swinging member raised to its highest position, the pin of the pawl could be switched off into another track, by which it could be returned over a free and smooth surface, allowing the swinging member to be adjusted to its lowest position.

The first patent with the two-track device was that issued to Poolman & Marks in 1884. This patent is for an improvement on adjustable chairs, and applied to a hinged foot rest of the chair. It is a two-track ratchet-plate, in which the pin on a pivoted pawl works; the two tracks being formed by a dividing rib and a surrounding flange. The lower track is provided with the ratchet-teeth facing toward the left so that the pawl pin can be drawn forward, step by step, to the left, to get any adjusted angular position of the hinged member determined by the number of notches ratcheted. When the pawl pin reaches the extreme of its forward motion, the force applied thereto raises the switch, and the continued movement allows the switch to drop behind the pawl pin; the tracks being thus normally discontinued. The pawl can now be pushed to the right, and, as it moves in this direction, the applied force will lift or switch the pawl pin up into the upper track formed by the dividing rib or projection, so that the pin can be moved to the rear through this track, clear of the ratchet-teeth in the lower track. When the pawl pin reaches the extreme right-hand position, it will drop by gravity around the right-hand end of the dividing rib or projection, so that when it is drawn forward again it will pass through the lower notched track. This patent also shows that this end of the ratchet-plate is open, so that the pawl pin can be taken out of the tracks entirely, although there is nothing claimed in the specification as to this opening. It will be noted that this is a two-track ratchet-plate, in which the pawl pin is switched from a notched track into a smooth track by the action of a pivoted switch, separating the two tracks so that on the forcible rearward movement of the pawl pin the same will be raised into the upper clear track, and pass freely backward, and so that, at the end of its movement to the rear, the pin will drop down from the upper end around the dividing rib in position to pass forward again through the notched track.

Next in order of time was the Cleaveland patent, issued in 1888. It is a two-track ratchet-plate, to be applied to bed bottoms, known as "invalid beds," to render them more efficient, and capable of handling with greater care, in which the head portion can be set at various angles. It consists of a ratchet-plate of a circumferential flange, which is provided with ratchet-teeth on its inner lower face, and a switch pivoted inside of the circumferential flange, with its free end resting upon the left-hand tooth of the ratchet-teeth. This switch is a dividing partition, and separates the ratchet device into two disconnected tracks; the lower track being provided with the ratchet-teeth, and the upper track being smooth and unobstructed. For the purpose of returning the pin of the pawl, after the swinging member has been

raised, step by step, from its lowest to its highest position, as it passes out of the last notch of the ratchet it opens the switch, which falls behind the pin by gravity, and then forms the track whereby the pin is returned again to the lowest position assumed by the swinging member. This device is like the one used by the defendants in the Luppino patent, with the exception that in the Cleaveland patent the ratchet-teeth are placed upon the lower part of the circumferential flange, and the switch forming the dividing rib is smooth, and in the Luppino patent the lower part of the circumferential flange is smooth, and the upper part of the switch or dividing rib is notched.

The next is the Heather patent, issued in 1900, as a certain new and useful improvement in adjustable spring cot and frames, and consists of a pivoted pawl carried by the hinged head section of the cot, and a two-track catch or ratchet-plate carried by the other section; the said two-track ratchet-plate being provided with two tracks defined by a surrounding flange and a dividing rib, which is provided with projections to be engaged by the pawl upon its upper side; the two tracks being connected so that the pawl can pass from one track to the other at one end, and disconnected by a switch at the other end. The pawl passes from the upper track to the lower track in such manner as to drop to the lower portion of the way below said notched bar, and is switched up into the upper way by being caused to ride over the switch into the upper way of the notched bar. The fact that there is a loop for the purpose of manipulating the pawl does not modify its effect upon the prior art. The mechanism of this device is similar to the one used by the defendants, with the exception that the switch is a very short one, pivoted to the right-hand end of the notched dividing rib, and would be almost identical if the entire notched dividing rib were used as a switch pivoted at the left-hand end of the notched dividing rib.

The next in order is a patent to Mr. Bowen, issued June 5, 1900, for a new and useful improvement in furniture, and consists of a two-track ratchet-plate arranged to lie horizontally, instead of vertically, as in the prior devices. It has the usual circumferential flange, and separated by dividing rib or projection. One track is provided with ratchet-teeth, and the other track is smooth. The tracks are connected at their ends by curved passageways, and no switch is used, but the pawl is changed from one to the other passageway by gravity, and a lateral movement of the pawl caused by the curve arrangement of the flange. This device, however, is more in the line of the one employed by the complainants in their patent, and is not important in considering the prior art with reference to the defendants' patent, excepting as to the flange that may be cut away at one end, as represented in their specifications, to permit free engagement of the pawl with the ratchet or catch plate, if this be found desirable. This slot for engaging and disengaging the pawl with the ratchet is important, as bearing upon the question of the second Bowen patent.

The defendants' device is a patent issued to Joseph Luppino July 2, 1901, for a new improvement in adjustable supports for chair backs. It is a two-track ratchet-plate, which is supported by the frame of the chair, in which the pin of the pawl is operated for the purpose of rais-

ing and lowering the back of the chair. The ratchet-plate consists of a circumferential flange with a slot in the upper left-hand part of the flange, and two ways are formed by a dividing rib, which is notched on the upper face, and is hinged at the left-hand end for the purpose of forming a switch. In operation, as the swinging back of the chair is raised from its lowest to its highest position, the pawl pin ratchets up over the teeth on the switch forming the central rib. When the hinged section reaches its highest extreme, the pin drops down around the left-hand end of the moving switch. Then, as the swinging member is moved from its highest to its lowest position, the pawl pin passes through the lower smooth track until it reaches the switch, when it will elevate the same, and so that, when the pawl pin passes the end of the switch, the switch will drop behind the pawl pin and close the smooth track then behind it. As the swinging section of the chair is then lifted toward its highest position, the pawl pin will travel up the switch, the end of which is tapered so that the application of force to the hinged section lifts the pawl pin into the first notch on the switch, and so on as it is desired to raise the back of the chair. It is plain that the defendants are justified by the use of similar devices in the prior art and their patent under which they claim the right to manufacture this improvement upon furniture.

The complainants' patents can only be sustained by restricting them properly within the lines set forth in their claims 1 and 4, wherein it is found that the improvement to which they are entitled to a patent is the two tracks being connected, whereby the pawl may pass from one to the other, as in the first claim, and, as in the fourth, wherein it is stated that the two tracks are connected at their ends, and with the peculiar method of adjustment and relation of one part of the device to the other. The ratchet-plate may be so positioned with reference to the pivoted pawl that the device will work as set forth in the specifications, the distinguishing feature being the passage from one track to the other without a switch; and, as to the slot in the circumferential flange, which is the substance of the second patent, it can be sustained in connection with this particular device, as its utility and novelty is in the method by which the connection of the parts is made after they have been disconnected by being so adjusted as to enable the connection to result automatically; otherwise this patent, if broadened in construction to include any slot in a device of this kind, would be anticipated by at least two other patents.

The court is therefore of the opinion that in this case the patents of the complainants are not infringed. They are simply improvements, and they cannot exclude others from making improvements for the purpose of effecting the same object, so long as their invention is not copied. Where an invention is an improvement on a known machine by a mere change of form or combination of parts, the patentee cannot treat another as an infringer, who has improved the original machine by the use of a different form or combination performing the same function. The inventor of the first improvement cannot invoke the doctrine of equivalents to suppress all other improvements which are not colorable invasions of the first. All others have an equal right to make improved machines, provided they do not copy the same, or sub-

stantially the same, devices or combination of devices which constitute the peculiar characteristic of the previous invention. Burr v. Duryee, 1 Wall. 531, 17 L. Ed. 650; McCormick v. Talcott, 20 How. 402, 15 L. Ed. 930; Bragg v. Fitch, 121 U. S. 478, 7 Sup. Ct. 978, 30 L. Ed. 1008; Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059; Kokomo Fence Machine Company v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689.

Let a decree be drawn dismissing the bill, with costs.