## KLOTZ v. RUBINSTEIN et al.

### Civil No. 1489.

District Court, E. D. New York.

March 31, 1941.

Munn, Anderson & Liddy, of New York City (Daniel H. Kane and John H. Glaccum, both of New York City, of counsel), for plaintiff.

Fritz Ziegler, of New York City, for defendants.

GALSTON, District Judge.

This suit involves the alleged infringement of two patents relating to brief bags. The earlier one is to Trager, No. 1,768,496, granted June 24, 1930; the other to Klotz, No. 2,043,833, on June 9, 1936.

The usual defenses of invalidity and non-infringement are urged.

Trager sought to design a brief bag which would dispense with the usual stitching operations. To accomplish that he described a bag in which the bottom and ends or gussets are reinforced by metallic strips, the strips being attached in such a manner as to dispense with the stitching of the material. Claims 1, 2, and 3 of the Trager patent are in issue. It will suffice to discuss the first. It reads: "A brief bag or case of the class described comprising a front face, a rear face having a top flap, end gussets and a bottom and metallic clamping means for joining the edges of the gussets and bottom to the edges of the said front and rear faces, said clamping means extending throughout the height of the gussets and length of the bottom of said bag or case."

The defendant's bags show stitching of the parts as well as the employment of a metal frame. The frame on defendant's cases, if used without the stitching, would not hold the bags together, at any rate not beyond a very short period of time. The normal strain is on the stitches which lie inside the inner edges of the frame. Apparently the only purpose served by the metal frame as employed on the defendant's bags is to protect the edges of the front and back sections from wear and

tear and to preserve the shape of the case. It is true that the three claims in suit make no specific elimination of stitching. The means indicated are just a metal clamping extending throughout the height of the gussets and the length of the bottom of the bag. In terms, therefore, that is to say as a mere matter of literal application of the claims in suit to the defendant's bags, infringement would be found and the stitching would be regarded then as mere addition or improvement of the invention of the Trager patent. Nachman Spring-Filled Corporation v. Spring Products Corporation, 2 Cir., 68 F.2d 829; Temco Electric Motor Co. v. Apco Manufacturing Co., 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298.

However, the Trager patent is entitled to no such broad interpretation nor to such literal comparison of the terms of the claims with the challenged structure of the defendant, for the stated object of Trager was to dispense with the usual stitching operations. This appears not only from repeated reference thereto in the specifications; but the same insistence is urged in the file wrapper of the application. Therein, in order to avoid the citation of the Charsky patent No. 1,424,152, Trager directed the attention of the examiner to the stated object of his invention as calling for the elimination of stitching and the substitution therefor of metallic strips. Of course it has been said that a patentee is not to be bound by the argument of counsel adopted during the prosecution of his application for a patent. Such is the general rule. In this case, however, the argument of counsel places merely additional emphasis upon the patentee's own specification. Schriber-Schroth Co. v. Cleveland Trust Co. et al., 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. ——. In view of the patent to Charsky the Trager invention is one of very narrow scope. That patent discloses metal reinforcements at the lower corners of the bag to meet the strains of wear and tear. Fig. 4 of the Charsky patent shows the reinforcing element, and the specification describes it, as a fairly stiff sheet metal stamped into an L piece, and U shaped in cross section. Such frames went into commercial use, as appears from the advertisements of the Presto Metal Stamping Corporation. It does not seem that the extension of the L shaped strip of Charsky throughout the length of bottom and sides would require any high order of mechanical skill. In any event, to concede that the elimination of the stitching was the object of Trager is to narrow the scope of the claims to a device in which no stitching is used. In other words, Trager, having taken a position not only through the argument of his attorney but in his own specification, must be held to a narrow construction of his claims. See Greene v. Buckley, 2 Cir., 135 F. 520; Lewis v. Merritt, Chapman & Scott Corp., 2 Cir., 12 F. 2d 345; Dey Time Register Co. v. Syracuse Time-Recorder Co., 2 Cir., 161 F. 111; Superior Skylight Co. v. Zerbe Const. Co., D.C., 5 F.2d 982; Bragg v. Fitch, 121 U.S. 478, 7 S.Ct. 978, 30 L.Ed. 1008; American Grass Twine Co. v. Choate et al., 7 Cir., 159 F. 429; Shawmut Engineering Co. v. Crompton & Knowles Loom Works, 1 Cir., 16 F.2d 685. That being so, defendant's use of stitching must be held to avoid infringement.

The patent to Klotz also described the advantage of a metal protector on a brief case for the purpose of framing the edges. It is stated in the specification that such edges would be protected from rough wear and tear and that ragged and shabby edges would be eliminated. This patent seemingly was not designed to avoid the stitching, for the patentee says: "The usual stitching will be enclosed and be kept from opening, tearing or bursting." He also indicated that the use of the metal frames would maintain the shape of the case, adding to its durability, and would permit the case to be placed in upright position.

Only Claim 1 of the Klotz patent is in issue. It reads: "A case constructed of sections of sheet material having lapped end and bottom edge portions secured continuously therealong at the front and rear of the case, and a metal protecting frame of cross-sectionally channel construction applied exteriorly to said edge portions at the front and rear of the case, the opposite longitudinal edges of the frame being offset and bent toward the lapped edge portions of the sections, thus impinging and crimping said edge portions of said sections."

This claim is infringed by the defendant as illustrated in the exhibits the defendant manufactured, 1 to 4 inclusive, introduced by the plaintiff in the trial of the case.

The essence of the invention lies in the offsetting of the edge of one wall with re-

spect to the opposite wall so that by bending one wall toward the lapped portion the walls impinge and crimp the material. The defendant claims that its frames do not embody the patented construction because the overlap on the exhibits extends approximately but an inch or an inch and a half at one end of the case only. It is contended that the slight overlap will not serve the same purpose as the contemplated continuous overlap of the patent. In exhibits 1, 2 and 3 the frames at the trial were sawed through at one or more points so as to permit the inspection of an intermediate portion of the frame. At those points it does appear that the longitudinal edges are offset. These exhibits in my opinion do read upon the Claim 1 of the Klotz patent. It is true that the defendant endeavored to explain the offsetting in some of its frames on the ground that the material was defective. But that explanation does not change the result, for these cases were manufactured and sold prior to the filing of the complaint. Thus for this reason it is unnecessary to review the testimony of Suter, an employee of the United Steel Frame Company which manufactured frames for the defendant's brief cases. It may well be that since the filing of the complaint the defendant has manufactured frames without offsetting the edges, but the issue of infringement must be judged on the basis of what was done before the suit was instituted.

The real issue, however, is the validity of the Klotz patent.

The patent describes the metalic frame as U shaped and then continues: "The frame 16 may be applied or secured in any preferred manner so as to be disposed exteriorly of the end and bottom edge portions with the stitching 15 enclosed thereby. The frame having the construction mentioned will provide opposite longitudinal edges 17 which impinge the lapped portions of the case sections and at the same time crimp said edge portions as shown most clearly in Fig. 3. In this manner each frame will be securely applied. If desired, in order to aid in securing the frame 16 in place the longitudinal edges 17 thereof may be provided with barbs or pointed projections 18, to impale the edge portions of the case sections, as shown most clearly in Fig. 4."

Thereafter the specification recites: "The opposite longitudinal edges, 17, of the frame are offset and bent toward each other in order to effectively impinge the material of the case sections and also to crimp the same to thus effectively retain the frame in place, to prevent the edge portions from slipping out of the frame."

This expresses the substance of his alleged invention—the offsetting of the longitudinal edges and the bending of those edges towards each other.

A prior art patent to Hiering & Fuller, No. 851,421, is for a bag frame and has for its object a method of securing the body of the bag to the hinged bag frame. The specification recites that it has been customary in the construction of such frames to provide channeled sections into which the margin of the open part of the bag is secured by means of filling plates held by means of rivets. To overcome the difficulties of such a construction the bag frame is composed of two hinged sections, each of which is P shaped in cross section with a convex portion and a plain portion separated at the middle of the plain portion and forming hollow channels for the reception of the margins of the bag body, gripping means being employed.

More important, though, is the patent to Steinman, No. 1,939,731, also for a hand bag, and his stated object is to provide in the frame improved means for securing the mouth of the bag to the frame. This he accomplishes by the use of what he terms "jaws" which he describes as follows: "Each jaw is formed of a piece of metal, which for practical purposes may be sheet metal, having the general form of a channel bar, the side edges of which are turned inward toward the center of the bar; the flange on the outer edge of the bar being preferably narrower and shorter than that on the inner edge."

Further on the patentee states that the edges of the flanges "may, if desired, be bent inward so as to have a positive holding grip upon the material."

These two patents show that the practice of crimping the material of a case between the opposite walls of a channel frame in order to grip and hold the edges in the frame was old in the art. Over the Trager disclosure Klotz defined a specific means for clinching the material of the bag. Trager described the use of prongs. Instead of prongs, Klotz suggested having the longitudinal edges of the frame offset and bent towards the lapped edge portions of the sections. In view of the Hiering & Fuller patent and the Steinman patent, with the Trager disclosure, Klotz's contri-

bution must be regarded as falling short of invention, for under decisions of the Supreme Court, it would appear that Klotz made no substantial contribution to the art of holding material within the channels of a metal frame. Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438; Concrete Appliances Co. v. Gomery, 269 U.S. 177, 46 S.Ct. 42, 70 L.Ed. 222; Saranac Automatic Machine Corp. v. Wirebounds Patents Co., 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634; De Forest Radio Co. v. General Electric Co., 283 U.S. 664, 51 S.Ct. 563, 75 L.Ed. 1339; Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U.S. 69, 54 S.Ct. 586, 78 L.Ed. 1131; Textile Machine Works v. Louis Hirsch Textile Machines, Inc., 302 U.S. 490, 58 S.Ct. 291, 82 L.Ed. 382.

I conclude that the Klotz patent is invalid. The defendants may have a decree dismissing the complaint. Submit findings of fact and conclusions of law in conformity with the foregoing opinion.