SHIPMAN, Circuit Judge.
This appeal is from a decree of the circuit court for the Northern district of New York, which found that the defendant had infringed claims 1, 2, 5, and 7 of letters patent No. 458,995, granted to George Booth on September 8, 1891, for an improved bath tub. The specification described the invention'as follows;
“The object of the invention is to construct a cheaply-made, but practically indestructible, hath tub; and it consists, essentially, of a hath tub composed of a casing made of light sheet steel, or such other light sheet metal as has a perfectly smooth surface; the said easing being lined with copper, aluminum, or other light, flexible metal, hammered, rolled, or pressed into close contact with the smooth inner surface of the casing; the said hath tub being preferably made in three sections, each section having an outwardly projecting flange formed on it to correspond with the flange on the section against which it abuts. * * * The outer easing of each section is preferably made of light sheet steel, as the surface of sheet steel is perfectly smooth, so that the inner lining, a, can be hammered, rolled, or pressed into close contact with its outer casing, A. This inner lining, a, is made of copper, aluminum, or other light, flexible metal. By using metal, like sheet steel, with an absolutely smooth surface, I am able to use an extremely thin lining, a, which enables me to produce a highly-finished hath tub at a low price, and which will be very light and portable.”
The patentee also said that an outer casing of cast metal could not he used, because the inner surface of the casing could not be made sufficiently smooth to receive the lining. The top edges of the tub were bent inwardly, so that the lining was held firmly *905 against the outer casing. A cap around the upper edges of the tub helped to hold the lining in position. The preferable division of the tub into three sections was for convenience of transportation. The claims in controversy are as follows:
“(1) As an improved article of manufacture, a batir tub composed of a smooth sheet-metal casing, having a lining of copper, aluminum, or other light, flexible metal, hammered, rolled, or pressed into close contact with its outer easing, substantially as and for the purpose specified. (2) As an improved article of manufacture, a bath tub composed of a smooth sheet-metal casing, having a lining of copper, aluminum, or other flexible metal, hammered, rolled, or pressed into close contact with its outer casing, in combination with a capping extending over, and secured to, the upper edges of the bath tub. (5) As an improved article of manufacture, a bath tub composed of a smooth sheet-metal easing curved in cross sections, so that its upper edges incline inwardly, a lining of copper, aluminum, or other light, flexible metal being hammered, rolled, or pressed, into close contact with its outer casing, substantially as and for the purpose specified. (7) As an improved article of manufacture, a bath tub composed of three flanged, smooth sheet-metal sections, lined with copper, aluminum, or other light, flexible metal, hammered, rolled, or pressed into close contact with its outer casing, in combination with a capping extending over and secured to the flanges formed on the upper edges of the bath tub, substantially as and for the purpose specified.”
The trial judge truly stated that the sheet steel and copper tub which the patentee made- is cheap, strong, durable, light, and easily moved. The experts in behalf of the complainant relied strongly upon the point that it was a cheap tub, which contained no concealed woodwork, and was so constructed that the pipes and joints were exposed, and that the exterior of the tub was open to free ventilation and examination, and was therefore an improvement both upon tubs which were incased by wooden boxes, and upon expensive porcelain tubs. These sanitary advantages were not mentioned in the specification, but the tub, being, as a whole, of metal, in fact excluded woodwork; and, being elevated upon legs, it was-raised from the floor, and therefore the pipes could be examined with ease. The minor improvements specified in claims 2, 5, and 7 were not of patentable importance; and if the patentee had confined himself, in the first claim, to what he actually gave to the public,—a smooth sheet-steel casing, having a lining of flexible copper,, rolled or pressed into close contact with its outer casing,—the patent would have been much stronger. But he went further, and claimed a smooth sheet-metal casing of any sort, having a lining of any light, flexible metal brought into close contact with the outer casing, and thereby gave too great breadth to his patent. He evidently intended to include all sheet metal, whether of zinc, copper, or tin. Smooth sheets of metal of different kinds, rolled or pressed together, were not unknown in the art of the coppersmith, and had been used' in soda fountains and in water boilers; but these examples belonged to articles which were unlike bath tubs, and are not important in this connection. The patent to Charles E. L. Holmes, No. 189,559, dated April 17, 1877, was for a portable bath tub made of two kinds of metal; the body of the metal being zinc, and the facing of tin. “The sheet,” says the specification, “is formed by uniting a thin sheet of tin and a thicker sheet of zinc by rolling the *906 •two sheets together, soldering them face to face, or otherwise producing a homogeneous sheet having tin for a facing and zinc for the body.” The outer casing of each section of the Booth tub “is preferably made of light sheet steel, so that the inner lining can be hammered, rolled, or pressed into close contact with its outer casing.” The distinction which the complainant’s experts make between the modes of construction of the respective tubs, viz. that the Booth tub is made of two independent sheets of metal, one nested within the other, whereas the Holmes tub is made from a hoino.geneous sheet of compound metal, was not recognized in the original Booth specification, which said that his “lining was hammered, .rolled, or pressed so as to be practically integral with its outer •casing.” The body of each tub can be made by rolling the two sheets of metal together, and, if the Holmes alleged invention had never ■existed, a tub made of sheet zinc and sheet tin combined by rolling or otherwise pressing the sheets together would have been within the terms of claim 1 of the Booth patent, unless it should be construed as being exclusively for a stationary tub which is connected •with the house system of water supply. If the Booth claim should properly be thus limited, the Holmes tub is so much a part of the prior art as to deprive the claimed improvement of the character of invention, for the means of which Booth claimed a monopoly for the manufacture of a stationary tub had been used before to make .a light, cheap, and durable portable tub. Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81. The decree of the circuit court is reversed, -with costs.