# IN RE SMITH'S APPEAL.

### PATENTS; PATENTABILITY.

1. An improvement in a stocking-supporter, consisting in raised lugs on the side of the slot-plate to prevent the stud over which the upper end of the stocking is gripped from rising in the slot and becoming disengaged, does not rise to the dignity of invention, in view of the fact that lugs for the same purpose have been used in suspender-clasps.
2. There is no such remoteness in the use of the slot-plate with the lugs in the clasp of the suspender under such circumstances, as is sufficient to raise its adaptation to use in a stocking-supporter from the plane of mechanical ingenuity to that of invention. The use is clearly analogous.
3. Although it may appear that a device is of superior utility over other devices, as it has gone into general use, the fact that it has gone into such use, even to the displacement of other devices, has no weight upon the question of patentable novelty except when it is otherwise in doubt.
4. Where patentable novelty has been denied not only by one but by all the tribunals of the Patent Office, the applicant must make out a very clear case of invention to justify a reversal

by this court; and this is but another application of the same principle that governs in those cases where a patent having been granted, all doubt in respect of invention is resolved in favor of the patentee.

No. 113.  Patent Appeals.  Submitted January 11, 1899.  Decided February 7, 1899.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting certain claims in an application for a patent.    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Foster & Freeman* for the appellant.

*Mr. W. A. Megrath* for the Commissioner of Patents.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents rejecting two of the three claims of an application for a patent for an improved garment fastener or supporter.

The following are the claims the patentability of which have been denied:

"1. A holder or fastener for garment-supporters; consisting of a plate adapted to be connected to the usual supporting-band, and with a slot enlarged at the top and contracted at the lower end to receive the usual headed stud, and projections on the said plate contiguous to the slot and above the lower end of the same and adapted to engage the garment upon the head of the stud and hold the same in the narrow end of the slot, substantially as described.

"2. In a garment-supporter, a loop formed from sheet metal and constructed with a stud-receiving opening larger at one end than the other, the metal of the plate being bent or turned outwardly from the face thereof on opposite sides of the receiving-opening, and intermediate of the enlarged and contracted portions of said opening, substantially as shown and described."

The combination of the applicant seems to have produced a useful device for supporting stockings, and appears from

affidavits contained, in the record to have been manufactured and put upon the market in great quantities.

The rejection of the claims for want of patentable novelty was founded mainly upon the following patents in the same class to which they belong: Pototsky, July 14, 1868, No. 79,918; Adler, November 11, 1884, No. 307,895; Lindsay, June 16, 1885, No. 319,985; Cattell, December 27, 1887, No. 375,475; Knothe, February 6, 1894, No. 514,231; Cohn, January 13, 1895, No. 310,797.

The patents of Cattell and Pototsky are chiefly relied on as disclosing anticipations of the invention. The others are useful in showing the prior state of the art.

A defect in the operation of the familiar Lindsay supporter was this: During the ordinary movements of the wearer, and when not under uniform tension, the stud, over which the edge of the stocking is slipped in the gripping process, has a tendency to rise in the slot and become disengaged.

Cattell undertook to overcome this by making the narrow lower end of the slot, into which the stud fits when engaged, a little narrower at its opening, so that when the stud is pressed through it will resume its place and act with a spring-pressure to prevent its easy sliding upward to the point of disengagement.

This same difficulty occurred in the use of the clasps of trousers suspenders that had been devised to effect disengagement between the shoulder-strap or support and the lower straps which buttoned to the trousers in front. Pototsky's invention to remedy this consisted in placing or raising a bar or lug on each side of the slot plate immediately below the entrance to the narrow part of the slot, so that the stud when pressed down would lie below them. This stud was mounted on a spring bar or tongue which permitted it to pass the lugs under pressure in moving down and up, but the spring-pressure of which was sufficient, under ordinary circumstances, to prevent its upward

movement beyond the lugs. There being no engagement with the garment as in the case of the stocking supporter, the spring movement was important and even necessary to the proper operation of the clasp.

When the applicant, Edward S. Smith, undertook his improvement he raised the same lugs in the same place on the slot plate of the stocking supporter clasp. The stem of the stud was made sufficiently long for it to move up and down over the lugs with very slight, if any, pressure when not engaged with the stocking; but when so engaged and forced down the slot the garment took up the free space and the stud, becoming impeded by the lugs, could not easily move up to the wide space above and become disengaged. It was not mounted on a spring bar.

We concur with the Commissioner in the opinion that this transfer of the lugs of the Pototsky suspender clasp to the clasp of the stocking supporter does not rise to the dignity of invention.

The combination here claimed has not produced a new device differing distinctly in character and function from others then in existence and common use, nor does it accomplish a novel result through the co-operative action of old agencies. The applicant seems to have done nothing more than exercise mechanical skill in bringing old devices into juxtaposition and thereby constituting an aggregation merely of separate elements. *Knapp* v. *Morss*, 150 U. S. 221, 227; *Durham* v. *Seymour*, 6 App. D. C. 78, 103, and cases cited; *In re Briggs*, 9 App. D. C. 478, 481; *In re Griswold*, 9 App. D. C. 496, 503; *In re Draper*, 10 App. D. C. 545.

There is no such remoteness in the use of the slot plate with the lugs in the clasp of the trousers suspender that is sufficient to raise its adaptation to use in a stocking supporter from the plane of mechanical ingenuity to that of invention. The use is clearly analogous. *Potts* v. *Creager*, 155 U. S. 597, 606; *In re Briggs*, 9 App. D. C. 478, 481.

The two things are very nearly allied in use, and both

are contained in the same class (No. 24, Division XI), of the Patent Office under the head of buckles, buttons, clasps, etc.

If a stocking supporter were a new thing, and the applicant had invented it by applying in a device for the purpose a clasp in use in the ordinary trousers suspender, a very different question would be presented. The supporter, however, was old. The stud covered by the garment and working in the narrow slot to maintain its engagement was old.

All, then, that can be claimed is the superior utility of the device over others that is attested by the general use into which it has gone, as stated in the affidavits before referred to. But the fact that a thing has gone into general use, even to the displacement of other devices employed for the same purpose, has no weight on the question of patentable novelty except when it is otherwise in doubt. *Potts* v. *Creager*, 155 U. S. 597, 609; *Durham* v. *Seymour*, 6 App. D. C. 78, 93, and cases therein cited; *Fenton Co.* v. *Office Specialty Co.*, 12 App. D. C. 201, 217.

On the other hand, where patentable novelty has been denied not only by one, but also by all, of the expert tribunals of the Patent Office, as in this case, the applicant must make out a very clear case of invention. *In re Barratt*, 11 App. D. C. 177, 179. And this is but another application of the same principle that governs in those cases where a patent, having been regularly granted, all doubt in respect of invention is resolved in favor of the patentee. *Fenton Co.* v. *Office Specialty Co.*, 12 App. D. C. 201, 216.

For the reasons given the decision of the Commissioner of Patents will be affirmed, and the proceedings and decision herein will be certified to him, as required by law. It is so ordered.                              *Affirmed.*