**BILQUE et al. v. MERRY BROS. BRICK & TILE CO., Inc.**

No. 152.

District Court, S. D. Georgia.

July 23, 1932.

Jones, Jones, Johnston & Russell and J. E. Hall, all of Macon, Ga., for complainants.

Callaway & Howard and Lee, Congdon & Fulcher, all of Augusta, Ga., and Chas. E. Cotterill, of Atlanta, Ga., for respondent.

BARRETT, District Judge.

Complainants seek injunction against respondent from manufacturing and selling a brick tile (hereinafter for convenience called the Merry unit), for the reason that it "infringed on said patent by making and selling a brick tile embodying a patented feature, to-wit, the parallel webs of the brick tile

covered by Patent No. 1,385,299." By amendment it was alleged that said Merry unit "infringed on said patent by making and selling the brick tile embodying the patented features set out in claim 1 of the Letters Patent No. 1,385,299, to-wit:

" 'A hollow twin block structure comprising two stretcher faces having comparatively wide top surfaces and two header faces, the said stretcher faces being connected by a plurality of narrow, spaced-apart, transverse, vertically disposed, parallel webs and constituting mortar receiving surfaces, the outer of said webs with the end portions of said stretcher faces constituting the header faces, and the centrally disposed, parallel webs being adapted to furnish a hand-hold, the said webs cooperating with said stretcher faces to form the walls of vertically disposed openings in the block, each of said stretcher faces and header faces being equal in length, width and thickness to the corresponding parts of a building brick.' "

Respondent defends because (a) said patent is invalid for lack of novelty, invention, or utility, and (b) there has been no infringement.

In response to challenge, respondent set forth in detail a long list of patents which it claimed covered the Bilque patent or the Du-Brick, as it is claimed.

The Bilque patent contained three claims, Nos. 1, 2, and 3. No. 2 deals with a provision for cleavage and frangibility and 3 for mortar receiving surfaces. Neither of these elements are utilized in the Du-Brick as manufactured, and neither of them was embodied in the Merry unit. No claim is made as to infringement in these particulars.

The following is from complainants' brief:

"Complainants claimed that the Bilque brick, or Du-Brick, while possessing no single new element, did, by a novelty of arrangement of old elements, produce a new and useful result; viz:—

"A combination brick and tile wall, having the advantages of both brick and tile construction; the strength and appearance of brick and the air spaces of tile; a greater facility in breaking the mortar joint, with a consequently drier wall; economy in laying and in shipping."

And further: "Complainants are willing to rest their case on the Barbed Wire Case, but also wish to call the attention of the court to two other cases as illustrative of the slight changes which have been held patentable. These are the Denison and Dunn cases."

The principle invoked is succinctly stated in this headnote in the Barbed Wire Case, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154: "Courts incline to sustain a patent to the man who takes the final step in the invention which turns failure into success."

Respondent introduced in evidence the file wrapper disclosing the history of the application for the Bilque patent in the Patent Office as influential, if not conclusive, as to the validity of the portion of the Bilque patent relied on in this proceeding. It is not deemed worthwhile to quote very extensively from said wrapper file, but the following quotations are needful in explanation. The application was filed on April 19, 1918, and the invention claimed and desired is thus formulated:

"1. A tile brick, the exposed faces of which are substantially brick size and in width substantially equal to the width of the wall and presenting substantially a flat tile having two comparatively wide sections at the front and rear faces connected by webs which define a narrow central opening and two larger openings adjacent thereto.

"2. In a hollow wall construction formed of flat tile brick having openings extending vertically through the same and having a central opening defined by centrally disposed webs.

"3. A flat, substantially rectangular tile brick composed of two units connected by narrow necks or webs having vertical openings therein, the central of said openings being narrower than the side openings and having a plurality of vertically disposed openings in the front and rear walls thereof.

"4. A flat, substantially rectangular tile brick, the exposed faces of which are brick size, and the width of which is equal to the width of the wall, and having a comparatively wide section at the front and rear, connected by narrow webs, two of which are centrally disposed, the said sections being adapted to be severed at a point to produce a header or a stretcher."

This claim was denied because of lack of invention. Several amendments were presented to the application, with rejection following.

On March 15, 1920, the Acting Examiner of the Patent Office suggested the following method of stating the claim: "A hollow twin brick structure having two stretcher faces

and two header faces, all of said faces having substantially the same dimensions, one of said header faces being provided with a centrally located channel-shaped recess adapted to divide said face into two similar header portions, the sides of said channel-shaped recess intersecting the header face at substantially right angles to form square corners on each of said header portions, and a portion of the inner wall of said recess being formed at substantially right angles to the said side walls thereof to give a definite depth to the recess, said recess also forming a cleavage portion facilitating the breaking of the twin brick structure into two similar standard sized bricks each having a finished stretcher face and a finished header end, and partition walls within the body of the brick on opposite sides of said channel-shaped recess and offset therefrom, said walls extending substantially parallel to said stretcher faces, substantially as described."

Thereafter the application was amended, and claim 1 was thus stated: "A building block formed of two equal separable sections, the said sections comprising two comparatively wide portions, transverse vertical webs connecting said wide portions, two of said vertical webs with the end parts of said wide portions constituting the ends of the block, and the wide portions furnishing mortar receiving surfaces, the two intermediate webs being adapted to furnish a handhold, the said webs co-operating with said wide portions to form the walls of vertically disposed openings in the block and each of said separable units being equal in length, width and thickness to a building block."

And No. 2 was in the aforesaid language suggested by the department, and which is now No. 2 of the Bilque patent.

The following is the ruling of the department:

"Claim 1 is rejected upon the art of record for reasons fully set forth in the office letter of April 1, 1919.

"Claim 2 stands allowed and is believed to cover the novelty in this case."

Thereafter claim 1 was amended so as to read as embodied in the Bilque patent, and, after an interview between the Examiner and the inventor, Mr. Bilque, there was added an amendment which is now No. 3 of the Bilque patent, the distinguishing feature of which was the mortar key commented on above.

In view of the principles of law applicable to this case, hereinafter set out, and of the findings of fact hereinafter set out, it is not deemed essential or even helpful to attempt to review and digest the oral testimony, much of which was conflicting and much of which was merely opinions.

The following principles of law are deemed applicable:

"Where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the Patent Office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping that element.

"Where a claim to a combination is thus restricted to specified elements, all must be regarded as material, and the limitations so imposed by the inventor must be strictly construed against him and looked upon as disclaimers.

"And the patentee, having thus narrowed his claim to obtain the patent, may not thereafter, by construction or by resort to the doctrine of equivalents, give the claim the larger scope which it might have had without the amendments amounting to a disclaimer." I. T. S. Rubber Company v. Essex Rubber Company, 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335 (fourth, fifth, and sixth headnotes). To the same effect, see Smith, Adm'x, v. Magic City Kennel Club, Inc., 282 U. S. 784, 51 S. Ct. 291, 75 L. Ed. 707.

"Patentee's acquiescence in ruling of Patent Office and amendment of claims accordingly is equivalent to acknowledgment of state of art, and invention is restricted in scope to what is declared to be new."

"Presumption exists that whatever patentee does not expressly claim he has abandoned to public." Headnotes 1 and 3, West, Etc., Co. v. U. S. Paper Mills (D. C.) 44 F.(2d) 790.

"A function or mode of operation is not patentable. It is the structure, the substantive thing, that produces the result. A claim for the function of the invention is void." Trico Products Corp. v. Apco-Mossberg Corp. (C. C. A.) 45 F.(2d) 594, on page 598, citing a number of cases.

"It is well settled that the second claim must be read and interpreted with reference to the rejected claims and to the prior state of the art, and cannot be so construed as to cover either what was rejected by the patent office, (Shepard v. Carrigan, 116 U. S. 593, 6 S. Ct. 493 [29 L. Ed. 723]; Sutter v. Robinson, 119 U. S. 530, 7 S. Ct. 376 [30 L. Ed.

492]), or disclosed by prior devices." Knapp v. Morss, 150 U. S. 221, 224, 14 S. Ct. 81, 82, 37 L. Ed. 1059.

And again from the same case on pages 228, 229 of 150 U. S., 14 S. Ct. 81, 84, 37 L. Ed. 1059:

"If, however, the patent could be sustained at all, it would have to be restricted and confined to the specific combination described in the second claim, as indicated by the letters of reference in the drawings, and each element specifically pointed out is an essential part thereof. Duff v. Sterling Pump Co., 107 U. S. 636, 638, 639, 2 S. Ct. 487 [27 L. Ed. 517]; Newton v. Furst & Bradley [Mfg.] Co., 119 U. S. 373, 7 S. Ct. 369 [30 L. Ed. 442]; Bragg v. Fitch, 121 U. S. 478, 7 S. Ct. 978 [30 L. Ed. 1008]; Crawford v. Heysinger, 123 U. S. 589, 8 S. Ct. 399 [31 L. Ed. 269]; Dryfoos v. Niese, 124 U. S. 32, 8 S. Ct. 354 [31 L. Ed. 362].

"For, if not so restricted by the letters of reference, the effect would be to make the claim coextensive with what was rejected in the patent office.

"If any validity could be conceded to the patent, the limitation and restriction which would have to be placed upon it by the action of the patent office, and in view of the prior art, would narrow the claim, or confine it to the specific structure therein described; and, as thus narrowed, there could be no infringement on the part of appellants if a single element of the patentee's combination is left out of the appellants' device. Sargent v. Hall Safe & Lock Co., 114 U. S. 63, 5 S. Ct. 1021 [29 L. Ed. 67]; Eddy v. Dennis, 95 U. S. 560 [24 L. Ed. 363]; McCormick v. Talcott, 20 How. 402 [15 L. Ed. 930]."

"Courts incline to sustain a patent to the man who takes the final step in the invention which turns failure into success." Barbed Wire Case, 143 U. S. 275 (2), 12 S. Ct. 443, 36 L. Ed. 154.

In Standard Brick Co. v. Denison Interlocking Tile Corp'n (C. C. A.) 285 F. 108, the report of which has been supplemented by furnishing this court with the printed record in such case, it is manifest from the opinion that the two elements that resulted, namely, making the wall "laterally stronger" and also "vertically stronger," were the controlling influences.

Without citation of authority, the principle is recognized, I take it by both sides, that "a combination to be patentable must itself possess novelty and invention."

### Findings of Fact.

(1) Claim No. 1 of the patent in question is identical in substance with the original application which was rejected by the Patent Office for lack of novelty and invention, and also substantially the same as the several amendments proffered by the applicant and that were rejected by the Patent Office. The handhold existed though not named.

(2) The patent was not granted until Nos. 2 and 3 of the claim of applicant, as finally granted, were incorporated in the application. These added the elements of frangibility and mortar keys, neither of which elements are combined in the Du-Brick or in the Merry unit.

(3) The elements combined in No. 1 of the claim of patent, under which this proceeding is had, appear either separately or in combination in a number of articles covered by prior patents, as set forth by name and number and date in the amendments to respondent's answer.

The patented article as described in claim No. 1 possesses no patentable novelty, and discloses no involved idea, but is merely a simple combination produced by mechanical skill.

(4) For the reason that the claim of the patent set forth by complainants is held invalid, there is no reason to consider the question of infringement.

### Conclusions of Law.

The complainants are not entitled to the injunction prayed for, and the prayer of complainants is denied at the cost of complainants.

Let an order be taken accordingly.