## LEWIS v. MERRITT, CHAPMAN & SCOTT CORPORATION et al.

(Circuit Court of Appeals, Second Circuit. May 3, 1926.)

No. 310.

I. Patents ⟊328.

Lewis patent, No. 1,152,326, for apparatus for laying submarine pipe, *held* not infringed.

2. Patents ⟊174.

Claims covering an improvement are not entitled to a broad construction.

Appeal from the District Court of the United States for the Eastern District of New York.

Patent infringement suit by Thomas A. Lewis against the Merritt, Chapman & Scott Corporation and others. Decree for defendants (3 F.[2d] 66), and plaintiff appeals. Affirmed.

Dutton & Kilsheimer, of New York City (Lawrence Bristol, James B. Kilsheimer, Jr., and Harry Loeb Mostow, all of New York City, of counsel), for appellant.

Emery, Booth, Janney & Varney, of New York City (Lucius E. Varney and Manvel Whittemore, both of New York City, of counsel), for appellees.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The patent in suit is for a method of and apparatus for laying submarine pipes. The invention is directed to laying a line of connecting pipe sections from a floating vessel into a dredged trench under deep water and the apparatus for carrying on the work. It is said that the apparatus provided minimized the strain

on the pipe joints when the vessel is subject to fluctuations by the water. It consists of a launchway, admittedly known in the art, means of scraping the trench bottom in advance of the pipe, and buoyancy devices to lighten the launchway and to control the action of the scraping means. It also provides a rigid launchway with means for connecting the same to the floating support, either resiliently or rigidly, as desired, and also for enabling ready detachment of the launchway. There are nine claims, all of which are sued upon. The patent was applied for on May 27, 1915, and granted August 31, 1915. The decree below dismissed the bill.

[1, 2] On this appeal the appellee urges upon us that, not only has the appellant failed to prove infringement, but the patent is not valid for want of invention. In support of its validity, it is urged that the claims of the patent are all combination claims. The first, third, fourth, fifth, and seventh claims include a spring or springs in some form or other as an element of the claim combination. The second, sixth, and ninth claims include spring means, which are referred to as yielding, resilient, or cushioning connection, and the eighth claim finds a combination of elements somewhat different from the other claims. It provides an apparatus for the purpose set forth, in combination, a floating vessel, a curvilinear launchway, suspended therefrom and provided adjacent its submerged end with a scraper, and a buoyancy tank secured to such launchway and tending to regulate the action of said scraper. The prior art is rich in inventions for apparatus for laying pipe under water, accomplishing the result this patentee had in mind, but it is insisted that the patent is an improvement upon existing machines. Whatever may be the new idea of the patent, it introduced no new principle of operation and fundamentally accomplishes no new result. These claims covering an improvement are not entitled to a broad construction. Dey Time Register Co. v. Syracuse Time Recorder Co., 161 F. 111, 88 C. C. A. 275.

Claims 1, 3, 4, 5, and 7 have as an element, a spring in the connection between the scow and the launchway. The record of the patent in the Patent Office indicates that it was necessary that the inventor rely upon the inclusion of the springs in order to secure the allowance of these claims. The appellant's deck connections, upon which the claims are based, compared with the appellee's deck connections, which are said to infringe, will not support appellant's position.

He cannot successfully argue that under the recognized rule of equivalents the construction of his claim would include the appliance used by the appellee in making its connection with the scow. In appellee's apparatus, the forward end of its launchway is supported by a heavy rope bridle, the bight of which rests in a curve of a heavy steel sheave. The ends of the bridle are fastened to a spreader, which in turn is fastened to the launchway by a double pin connection. The sheave is journaled eccentrically upon a steel pin extending over the bow of the scow. This construction provides freedom of movement between the scow and launchway to serve the required purposes. It would be inexpedient to provide a rigid fastening. The scow might change from its angular relation to the upper end of the launchway, and might roll from side to side, all without transmitting any strain to the launchway, but if the scow, at its point of attachment to the launchway, rose and fell, due to the action of the tides or waves, the forward end of the launchway necessarily rose and fell in exactly the same degree.

The supporting sheave is mounted eccentrically, so as to bring the cable groove as near the pivot pin as possible under normal conditions, and to provide a centering device which would resist the tendency of the launchway to move to one side or the other under the action of the tidal currents. The upper end of the launchway is free to swing like a pendulum. If it is moved to one side or the other while maintained in a horizontal plane, then one part of the bridle would tend to shorten, and the other would tend to lengthen, thus changing the relation of the bridle and sheave, so as to slightly raise the forward end of the launchway relatively to the scow. A sufficient force might be set up to keep the forward end of the launchway properly centered under the pivot of the eccentric sheave. The appellee's apparatus does not, in construction or function, resemble the appellant's apparatus in this use of the springs. In the appellee's apparatus, the fluctuations of the vessel at the point of support, due to water variations, are transmitted in the same degree to the forward end of the launchway, and there is no provision or means for permitting the folding support to rise and fall to any greater degree than the launchway. The forward end of the launchway hangs like a plumb bob from the outer end of the appellee's scow, and must necessarily rise and fall exactly as the forward end of the scow rises and falls.

The same distinctions have application to claims 2, 6, and 9. The appellant's construction has slotted plates, trunnions, and opposed springs. The appellee's construction has nothing which may be even vaguely defined as spring means or cushioning springs. The appellee's apparatus has not, in its construction, as stated in claim 7, a sling for supporting the launchway remote from the attachment of the latter to the vessel in which sling the spring means of that claim is placed. Claim 2 includes an element referred to as "means to render said connection substantially unyielding." Obviously, the meaning of the yieldable connection referred to in this claim is a connection, including springs, and we have found no spring in appellee's construction. In so far as the appellee's connection between the scow and the launchway may be said to be yieldable, there is nothing by means of which this connection can be changed or rendered unyieldable as may be done, as in the patent, where the springs, continuing to hold the shaft in the center of the slots, may be blocked up to prevent any relative motion whatever, except pivotal motion between the scow and the launchway.

Claim 6 refers to a supporting connection, including resilient means. The appellee's apparatus contains no direct support or connection from the scow to the launchway; the latter being supported at its forward end by the bridle passing over the eccentric sheave and having its rear end resting upon the trench bottom. The only connection between the scow and the launchway, at any point other than the point of attachment of the bridle, are the towing wires and preventer wires, which are attached to the launchway at the extreme rear end. These connections are in no sense supporting connections; they are designed solely for the purpose of transmitting from the deck to the lower end of the launchway the strains incident to the forward movement of the apparatus. They may not be said to be included in the resilient means. The inherent resiliency of the wire rope would be of no practical moment on such an apparatus. Claim 6 is not infringed.

Claim 9 provides, in addition to the scow launchway, a plurality of spaced cushioning connections between the support and launchway. The plurality of spaced connections apparently means the connection between the scow and the launchway at its forward end and the rear sling. Both are made up with springs which constitute cushioning connections. There was nothing in appellee's apparatus which in any sense may be said to be cushioning connections. The appellee's connections are all wire rope and are not cushioning connections.

Claim 8 is not limited to any connection between the scow and launchway, but includes in the combination a scraper at the lower end of the launchway and the buoyancy tank tending to regulate the action of the scraper. Buoyancy tanks were old. Infringement here may rest only in a similarity of function of the scraper and appellee's trailer. The functions described in the patent were to clear the trench bottom of silt or other deposits in advance of the pipe, and thereby leave an even and permanent bed for the line. Appellant established, we think, that the trailer cannot do this. The flat bottom of the skid rests on the previously scraped channel, and cannot pass ahead of the trailer and lay the pipe. The trailer flattens the pipe into a straight position, and it can do nothing to clear the way of deposit. It can dig no deeper than the bottom of the skid, which it follows right after; it cannot perform the work that the scraper could. The trailer in the 1915 apparatus of the appellee did, to some extent, act as a scraper, but that had edges which would scrape and plow as it struck the surface.

The claims being explicit, and the use of springs, plows, buoyancy tanks, and launchways having been well known in the art, the range of equivalents which should be accorded to the claims in suit are not sufficient to cover what the appellee has constructed in its device. Weber Electric Co. v. E. H. Freeman Electric Co., 256 U. S. 668, 41 S. Ct. 600, 65 L. Ed. 1162; Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 S. Ct. 627, 38 L. Ed. 500; Superior Skylight Co., Inc., v. August Kuhnla, Inc. (C. C. A.) 273 F. 482. The court below properly concluded that no infringement was established.

Decree affirmed, with costs.